CLERKS OFFICE US DISTRICT COURT
AT ABINGDON, VA
FILED

July 29, 2026
LAURA A. AUSTIN, CLERK
BY: **/s/ Robin Bordwine**
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **JANET BRIGHT,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:25CV00065 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **MICHELE BROOKS,** *in her* | ) | JUDGE JAMES P. JONES |
| *individual and official capacities*, | ) | |
| and LEE COUNTY DEPARTMENT | ) | |
| OF SOCIAL SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |

*Alexis I. Tahinci, TAHINCI LAW FIRM PLLC, Kingsport, Tennessee, for Plaintiff; James N.L. Humphreys, HUNTER, SMITH & DAVIS, LLP, Kingsport, Tennessee, and Matthew R. Dotson, MULLINS, HARRIS, JESSEE, & DOTSON, Norton, Virginia, for Defendants.*

The plaintiff Janet Bright, a former employee of defendant Lee County, Virginia, Department of Social Services (Lee County DSS), alleges that she was wrongfully terminated in retaliation for whistleblower reports she made to a governmental oversight body. She also alleges that as part of this retaliatory scheme, she was defamed. In four counts, Bright asserts claims under the Virginia Fraud and Abuse Whistleblower Protection Act (FAWPA) (Count One);  retaliation based on Article I of the Constitution of Virginia (Count Two);  retaliation under 42 U.S.C. § 1983 based on the First Amendment to the United States Constitution (Count Three);

and state law defamation (Count Four).[1] Count One is asserted against Lee County DSS; Count Two against both Lee County DSS and Michelle Brooks, the Director of Lee County DSS during the relevant times; Count Three against Brooks in her individual capacity; and Count Four against both Lee County DSS and Brooks.

The defendants have moved to dismiss the plaintiff's Third Amended Complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Mot. Dismiss, Dkt. No. 21. In addition, the court sua sponte directed the parties to brief the possible application of Eleventh Amendment immunity. Order, Dkt. No. 27 (June 24, 2026). All of these matters have now been fully briefed. For the reasons to be discussed, I will deny the motion to dismiss. I also find that Eleventh Amendment immunity, as well as any state sovereign immunity, does not bar the plaintiff's claims.

## I. IMMUNITY.

After the parties had briefed the defendants' motion to dismiss, the court directed the parties to further brief the question of whether Eleventh Amendment immunity applied to shield the defendants, an issue not then raised by the

---

[1] Subject-matter jursidiction of this court is asserted by the plaintiff based on 42 U.S.C. §§ 1983, 1988, and 28 U.S.C. § 1367.

defendants.[2]   The defendants now contend that both Lee County DSS and Ms.

Brooks are immune from suit; the plaintiff contends to the contrary.

The defendants rely largely on *Bockes v. Fields*, 999 F.2d 788 (4th Cir. 1993),

in which the Fourth Circuit found Eleventh Amendment immunity for the Grayson

County, Virginia, Department of Social Services in an action under § 1983 claiming

employment termination in violation of the Due Process Clause. The court in *Bockes*

held that because a substantial portion of any recovery could be traced to the state's

treasury, the action was barred, regardless of the consideration of any other factors

as to whether the defendant was a state entity. In support of the application of *Bockes*

to this case, the defendants have filed the affidavit of the chairperson of the Lee

County DSS, stating that the "budget" of Lee County DSS consists of 85% state

funds and 15% local funds, and that any recovery by the plaintiffs here would be

paid in the same proportion. Hines Aff., Dkt. No. 34 (July 24, 2026).

Based on *Bockes* and the Hines affidavit, it appears that Lee County DSS

would have Fourteenth Amendment immunity in this action. However, the plaintiff

has not had the chance to conduct discovery, including testing the facts of the Hines

affidavit. As to  defendant Brooks, sued in her individual capacity under both § 1983

and the state-law claims, the fact that Lee County DSS may have agreed to indemnify

---

[2]  "[A] court ought to consider the issue of Eleventh Amendment immunity at any time, even *sua sponte.*" *Suarez Corp. v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1997).

-3-

her using state funds does not immunize her. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (holding that state officials sued in their individual capacities for actions taken in their official positions do not share the state's Fourteenth Amendment immunity).

Accordingly, at this stage of the proceedings, I will not dismiss Lee County DSS on the basis of immunity. Once discovery has been completed, I will look again at the issue, based on any further evidence disclosed.

## II.  MOTION TO DISMISS.

In the present posture of the case I must accept the well-pleaded factual allegations by the plaintiff as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Lee County DSS is responsible for providing benefits and family services programs in Lee County, "operat[ing] as a local office of the Virginia Department of Social Services." 3d Am. Compl. ¶ 5, Dkt. No. 20. One of the programs is foster care. Plaintiff Bright was the Children's Services Act Coordinator and leader of the Family Assessment Planning Team.

Lee County DSS receives reports of child abuse or neglect and investigates and assesses the validity of these reports. Various Virginia statutes create obligations and procedures for Lee County DSS; it also has internal manuals and procedures it adheres to in the course of these investigations.

Lee County DSS is funded by government appropriations. As a result of these appropriations, Lee County DSS has certain statutory obligations regarding the authorization and monitoring of these funds. One obligation is that when a child is entitled to alternate government funding sources, those funds must be used to reimburse state funds used to support that child.

In the course of her employment, Bright became aware of an internal audit which identified instances in which Lee County DSS failed to comply with its obligations regarding the management of government funding. In response, Bright continually raised the issue of improper use of funds to Brooks and others at Lee County DSS, culminating with her calling a meeting of county officials, including Brooks, in the first quarter of 2023.

Bright also became aware in the course of her employment of a neglect case involving a two-year-old child who was repeatedly exposed to drugs. Bright became concerned for the child's well-being as a result of failures by Lee County DSS and its employees to adequately follow the appropriate protocols.

Bright's sister Julie Johnson was also an employee of Lee County DSS. In 2022 Johnson developed medical issues which resulted in her taking a medical leave; she requested and was denied medical leave under the Family and Medical Leave Act (FMLA). Bright informed Lee County DSS officials that the failure to accommodate Johnson was a violation of the FMLA and the Americans with

-5-

Disabilities Act (ADA). When Johnson returned to work in May 2023, she was asked to resign on the grounds that she had used all of her sick leave and other time off. She declined to resign and instead filed a request for FMLA leave. This was refused. Johnson ultimately retired, although it is unclear whether her employment was fully terminated; the complaint alleges she was on "leave without pay status" so she could continue to receive insurance through Lee County DSS. She also continued to answer work related calls and emails.

Bright ultimately reported her concerns about Lee County DSS's failure to comply with protocols designed to protect children from abuse and neglect to the state Office of the Children's Ombudsman in Richmond on June 19, 2023. Bright was a mandatory reporter. In a follow-up call one June 29, Bright also reported her concerns surrounding Lee County DSS's failure to provide Johnson with medical leave, which she believed violated the FMLA and the ADA.

On October 22, 2023, Bright and Johnson entered the Lee County DSS offices after hours so that Johnson could collect a document and her belongings. She carried her belongings out of the office in a duffel bag which had been donated to the office. On October 25, Bright was placed on administrative leave, and she was terminated on November 20. Brooks and Lee County DSS maintain Bright was terminated as a result of that incident.

Bright claims she was terminated in retaliation for her reports involving misuse of funds, failure to follow protocols relating to the protection of children, and Lee County DSS's failure to provide Johnson with reasonable accommodations. She alleges this violated the Virginia Fraud and Abuse Whistleblower Protection Act, the Virginia Constitution, and the U.S. Constitution. She also alleges Brooks and others at Lee County DSS defamed her.

A complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P . 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will "'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## III. ANALYSIS

The defendants contend that Bright has failed to plausibly plead her retaliation claim. They argue she has failed to plausibly plead that Brooks had knowledge of Brights protected activities. They also assert that her explanation of events is

implausible given, in their view, a more obvious explanation for Bright's termination. These issues will be assessed in turn.

Virginia courts have not established clear elements of the FAWPA statutes, but they generally interpret it following the generic retaliation scheme: there must be a protected activity, an adverse employment action, and a causal connection between the two. *See, e.g.*, *Perez v. Fairfax Cnty. Sch. Bd.*, No. 1:25-CV-2126-AJT-IDD, 2026 WL 1265802, at *4 (E.D. Va. May 8, 2026) (applying Virginia law). Counts II and III allege that the plaintiff was retaliated against as a result of engaging in a protected activity under Article I, Section 12 of the Virginia Constitution and the First Amendment of the United States Constitution. "The Virginia protection of free speech coexists (and thus is coextensive) with the federal protection." *Vlaming v. W. Point Sch. Bd.,* 895 S.E.2d 705, 737 (Va. 2023). The Fourth Circuit has a number of tests under which they assess First Amendment retaliation claims; in public employment contexts, courts use the *McVey* test, which considers:

    (1) whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest;

    (2) whether the employee's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public; and

    (3) whether the employee's speech was a substantial factor in the employee's termination decision.

*McVey v. Stacy*, 157 F.3d 271, 277–78 (4th Cir. 1998). A plaintiff must still prove the causal connection. Under this requirement, the protected expression must have been the "but for" cause of the adverse employment action. *Huang v. Bd. of Governors*, 902 F.2d 1134, 1140 (4th Cir.1990). Causation must include awareness or knowledge of the protected act on the part of the employer, a temporal proximity, and some evidence showing the protected act was a motivating factor. *Willis v. City of Virginia Beach*, 90 F. Supp. 3d 597, 611–12 (E.D. Va. 2015).

The defendants' assertion that the plaintiff failed to plausibly allege that Ms. Brooks had knowledge of her protected activities is wrong. In her complaint, the plaintiff alleges she made good faith reports regarding information she believed was true. 3d Am. Compl. ¶¶ 103, 129, Dkt. No. 20. She alleges that a fellow employee, Deborah Baker, overheard Bright's report to Richmond and reported it to her supervisor, who ultimately reported it to Brooks. *Id*. ¶ 87. Bright also alleges that Brooks terminated her because of this report. *Id.* ¶ 132. Accepting all of these allegations as true, Bright's retaliation claims are plausible on their face. Whether or not her allegations are made "upon information and belief" is irrelevant at this stage. *See, e.g.*, *Marsh v. Curran*, 362 F. Supp. 3d 320, 330 (E.D. Va. 2019) ("The fact that Plaintiff makes most of these allegations 'on information and belief' does not provide a basis to dismiss.") (citation omitted).

The defendants also assert that the temporal distance between the date on which Bright filed her report and her filing, and the availability of a more plausible, non-retaliatory justification for her termination renders Bright's retaliation claims implausible. The issue of temporal proximity may pose difficulties for Bright. The Fourth Circuit generally considers proximity attenuated after two months with no other facts, at least in the related Title VII context. *See, e.g.*, *Laurent-Workman v. Wormuth*, 54 F.4th 201, 219 (4th Cir. 2022). That said, where, as here, the plaintiff alleges more facts, such as that she was "a competent and reliable employee" and that Brooks and Lee County DSS had to wait for a failure on her part to serve as pretext, the plaintiff has alleged sufficient other facts to survive a motion to dismiss. 3d Am. Compl. ¶¶ 105, 108, Dkt. No. 20; *see, e.g.*, *Perez*, 2026 WL 1265802, at *4 ("[A] delay over two months requires additional proof or explanation."). The availability of an alternative explanation, while relevant, does not render a complaint implausible especially when, as here, the competing explanations are factually disputed, and Bright maintains that Brooks's explanation is pretextual. *See Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017) (posing the question as not whether a more likely explanation exists, but whether that explanation is so "irrefutably sound and unambiguous[]" that it renders the plaintiff's claim of pretext implausible).

Here, there are disputed facts that make it difficult to evaluate the claim, but accepting the facts alleged in the complaint as true, the plaintiff has established a plausible ground for relief. Accepting as true the disputed employment status of her sister, the fact that Brooks was waiting for a pretext to fire her, the fact that there was no policy against entering the office after hours and the fact that other employees had committed worse offenses without being terminated all tend to support the plausibility of the plaintiff's claims. The fact that the defendants have offered an alternative explanation does not render the plaintiff's claim implausible. Neither do, as the defendants assert, the fact that Bright made internal complaints before she filed a report to Richmond, the fact that Bright did not mention retaliation in her grievance appeal, or the fact that the Richmond office did not act on her report.

The defendants also assert that alleged defamatory statements are not actionable either because they are true, they are statements of opinion, or they are protected by qualified privilege. These arguments will be treated in turn.

For a statement to be actionable as defamation it must have a provably false factual connotation and be "'capable of being proven true or false.'" *Handberg v. Goldberg*, 831 S.E.2d 700, 705 (Va. 2019) (quoting *Cashion v. Smith*, 749 S.E.2d 526, 531 (Va. 2013)). Courts assess whether statements can be "reasonably understood as stating or implying actual facts, whether those statements are verifiable, and whether they are reasonably capable of defamatory meaning" by

"examin[ing] them in context." *Schaecher v. Bouffault*, 772 S.E.2d 589, 595 (Va. 2015). Opinions on the other hand are "[s]tatements that are relative in nature and depend largely upon the speaker's viewpoint." *Fuste v. Riverside Healthcare Ass'n*, 575 S.E.2d 858, 861 (Va. 2003).

Many of the allegedly defamatory statements are falsifiable, since Brooks' statements are factual in nature, rather than being opinions. It is falsifiable whether or not Bright allowed "unauthorized access" to Lee County DSS facilities after hours; the truth of the statement depends on Johnson's employment status. 3d Am. Compl. ¶ 152, Dkt. No. 20. It is falsifiable whether she consented to the "theft" of Lee County DSS property; whether she stole Lee County DSS property; whether she was a "burglar"; whether she engaged in dishonest, improper, or "criminal" conduct; and whether she was "caught stealing ink cartridges." *Id.* ¶ 152, 154. On the other hand, Brooks' statement "I bet Janet stole that [laptop] too," may be more a hyperbolic opinion than a statement of fact. *Id.* ¶ 155. At this stage, it is difficult to tell given the lack of context.

Neither is the truth of the statements a bar at this stage. "True statements do not support a cause of action for defamation." *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005). But the truth or falsity of the allegedly defamatory statements is more properly addressed at a later stage. *See Goulmamine v. CVS Pharmacy, Inc.*, 138 F. Supp. 3d 652, 659 (E.D. Va. 2015) ("At the 12(b)(6) stage in a defamation

case, a court must accept as false any statements which the Complaint alleges to be false.") (citing *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993)). Bright denies that she or Johnson stole anything, or that she consented to theft. 3d Am. Compl. ¶ 157, Dkt. No. 20. She also denied she engaged in any criminal activity. *Id*. She also disputes the employment status of Johnson, which makes it uncertain factually whether she permitted unauthorized access. Therefore, the statements are not rendered inactionable either by virtue of being opinions or false.

Qualified privilege may apply to some of the statements, but Bright alleges facts which, if true, would constitute a waiver of that privilege. "A communication . . . on a subject in which the communicating party has an interest or owes a duty, is qualifiedly privileged if the communication is made to a party who has a corresponding interest or duty." *Smalls v. Wright*, 399 S.E.2d 805, 807 (1991) (citing *Great Coastal Express v. Ellington*, 334 S.E.2d 846, 853 (1985)) Whether or not a privilege attaches to a communication is a matter of law. *See Cashion,* 749 S.E.2d at 532. That privilege may be lost if the statements are not made in good faith or are made with malice; this, however, is a question of fact. *Id*.

Brooks's allegedly defamatory statements made on October 23 to the Lee County Sheriff's Office and other Lee County officials may be privileged, especially where they are made before or close to Bright's termination. On the other hand,

where Bright has alleged facts that support the assertion of malice and reckless disregard for truth, the issue has become one of fact.

Virginia recognizes qualified privilege for otherwise defamatory statements that are made in the context of employment, without malice, to members of the organization who have an interest or duty relating to the subject matter. *Larimore v. Blaylock*, 528 S.E.2d 119, 122 (Va. 2000). Bright alleges that Brooks's statements made within Lee County DSS were made with malice, which if true would likely defeat whatever qualified privilege may attach. It is unclear from the complaint the extent to which these communications were published to third parties or employees with no interest or duty in the matter (beyond conclusory statements). It is inappropriate at this stage to dismiss individual defamation claims as a result of qualified privilege.

The plaintiff has plausibly alleged that the defendants retaliated against her and defamed her as a result of her engaging in protected activities. While the defendants may have affirmative defenses, at this stage the plaintiff's complaint is sufficiently well-pleaded to survive the motion to dismiss.

IV. CONCLUSION.

For these reasons, it is **ORDERED** that Defendants' Motion to Dismiss Third Amended Complaint, Dkt. No. 21, is DENIED.  The court will refer the case to the magistrate judge to conduct a scheduling conference.

ENTER:   July 29, 2026

/s/  JAMES P. JONES
Senior United States District Judge